[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-14112

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

QUINTON L. PETE,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:22-cr-00048-TKW-1

————————————————

2                          Opinion of the Court                     23-14112

Before JILL PRYOR, BRANCH, and BLACK, Circuit Judges.

PER CURIAM:

Quinton L. Pete appeals his convictions for attempted Hobbs Act robbery and possession of a firearm and ammunition by a convicted felon. First, Pete asserts the district court reversibly erred by denying his request for a *Daubert*[1] hearing to test the admissibility of the Government's ballistics toolmark identification evidence and testimony. Second, Pete contends the court reversibly erred by excluding or restricting testimony from his firearms ballistics expert who was qualified to testify on the subject. Third, Pete asserts the court violated his rights under the Confrontation Clause by admitting, over his objection, hearsay testimony that an unidentified, independent toolmark examiner reached the same conclusion as the Government's expert toolmark witness. We address each of his challenges in turn, and after review, affirm his convictions.

## I. *DAUBERT* HEARING

Rule 702 of the Federal Rules of Evidence allows a witness who is qualified as an expert to give testimony so long as:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (version effective to November 30, 2023). In this Circuit, scientific expert testimony is admissible if:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Ware*, 69 F.4th 830, 845-46 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 1395 (2024) (quotation marks omitted). The party seeking to introduce the expert opinion has the burden of establishing the three prongs: qualification, reliability, and helpfulness. *Id.* at 846. District courts consider four factors within the reliability prong "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Id.* (quotation marks omitted). Courts are not required to hold a *Daubert* hearing in every case where a party challenges the admissibility of expert testimony.

*Id*. The *Daubert* inquiry provides the district courts, which are much more familiar with the facts and needs of a case, the flexibility "to manage their dockets and counsels' time to provide the most efficient and just resolution of issues." *Id*.

In *Ware*, prior to trial, the defendant sought to exclude expert testimony regarding fingerprint evidence because new reports, from the National Research Council (NRC) and the President's Council of Advisors on Science and Technology (PCAST), stated that fingerprint analysis was unreliable and susceptible to cognitive biases. *Id*. at 840. The district court denied Ware's motion and determined that a hearing under *Daubert* was unnecessary, in part, because he failed to present a case from our Court or another district court in the Circuit that favored excluding fingerprint evidence under *Daubert*. *Id*. Ware asserted the district court abused its discretion by admitting the challenged evidence without holding a formal *Daubert* hearing. *Id*. at 835. He challenged the reliability of the fingerprint analysis generally, and not the qualifications of the Government's expert or the helpfulness of his testimony. *Id*. at 846. This Court held the district court was not required to hold a *Daubert* hearing before admitting the Government's fingerprint expert and did not abuse its discretion in deciding such a hearing was unnecessary. *Id*. at 847. Noting the district court had "considered the reports and arguments presented and found that fingerprint evidence was reliable enough as a general matter to be presented to the jury," we reasoned fingerprint evidence has long been accepted in our Circuit and that the cure for questionable, but admissible, evidence is cross-examination, not

exclusion.  *Id*. at 847-48.  This Court added the PCAST and NRC reports may cast doubt on the error rates of the fingerprint analysis but they go to the weight given to the analysis rather than the legitimacy of the practice.  *Id*. at 848.

The district court did not abuse its discretion in denying Pete's request for a *Daubert* hearing regarding the admissibility of the Government's ballistics toolmark identification evidence and testimony.  *See Ware*, 69 F.4th at 845 (reviewing the district court's decisions regarding the admissibility of expert testimony, the reliability of an expert opinion, and the denial of a *Daubert* hearing for abuse of discretion).  The court held a conference on the issue, permitted the parties to submit any additional documents and arguments on the issue, and decided the issue in a detailed order discussing each of the *Daubert* factors.  The court also determined the parties' schedules did not permit time for a *Daubert* hearing prior to trial, and, therefore, the trial would have been pushed back if the court had conducted a *Daubert* hearing.  Although *Ware* revolved around the admissibility of fingerprint evidence, the court did not err in relying on *Ware* in deciding whether to hold a *Daubert* hearing, because *Ware* also involved a challenge to the reliability of a commonly used forensic science method.  *Ware*, 69 F.4th at 846.  In the order, the court looked to *Ware* on the issue, but conducted its own detailed *Daubert* analysis based on the unique facts, evidence, and arguments the parties presented.  *Ware* supports the district court's finding that Firearm Toolmark Identification (FTI) evidence is sufficiently reliable to present to the jury and that cross-examination was the proper means to attack the expert testimony's

reliability. *Id*. at 847-48. Particularly, FTI evidence continues to be used in federal courts after the PCAST Report and NRC Report criticized the existing studies of its reliability, and Pete did not provide a federal court decision that prohibited FTI evidence based on *Daubert*. Additionally, other courts of appeals have upheld the admissibility of FTI evidence. *See United States v. Hunt*, 63 F.4th 1229, 1249 (10th Cir. 2023); *United States v. Brown*, 973 F.3d 667, 704 (7th Cir. 2020); *United States v. Johnson*, 875 F.3d 1265, 1280-81 (9th Cir. 2017); *United States v. Williams*, 506 F.3d 151,162 (2d Cir. 2007).

In his motion for a *Daubert* hearing and to exclude the Government's FTI evidence, Pete attacked the reliability of FTI broadly and contended it was not credible enough to meet the *Daubert* reliability requirements. The court adequately addressed that argument in analyzing the proposed evidence under each of the *Daubert* considerations. The court found that Andrew Pike was qualified to provide the FTI testimony of his findings because of his training and experience, including his role as a firearms toolmark examiner with Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). It found that Pike's testimony on the connection between the firearm found in Pete's possession and the shell casings found at the scene of the shooting would help the jury, particularly because such information was relevant to the crimes charged and was beyond the expertise of the jury. *See* Fed. R. Evid. 702; *Ware*, 69 F.4th at 845-46. The court's extensive reliability analysis considered the four factors under the reliability prong. *Ware*, 69 F.4th at 846. While acknowledging the critiques, the court found the methodology had been tested, subjected to peer review and publication, and

had a known error rate.  The court found the Association of Fire-arm Toolmark Examiners methodology continued to be generally accepted in the firearm expert community, despite the criticisms raised in the report and studies on which Pete relied.

In sum, the district court did not apply an incorrect legal standard, follow improper procedures in making its determination, or make findings of fact that were clearly erroneous.  *See United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021) ("A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." (quotation marks omitted)).  Accordingly, we affirm as to this issue.

## II.  LIMITING EXPERT TESTIMONY

*Daubert*'s gatekeeping function applies to all expert testimony.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).  The helpfulness prong of the *Daubert* analysis looks to whether expert testimony "concerns matters that are beyond the understanding of the average lay person."  *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004).  Further, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."  *Id*. at 1262-63.

The district court did not abuse its discretion in limiting J. Christopher McKee's expert testimony.  The district court followed the *Daubert* analysis, conducted a hearing on the issue, and made reasonable findings that some of McKee's proposed testimony was

beyond his expert scope and some of it was unhelpful to the jury, and therefore, the court did not apply an incorrect legal standard, follow improper procedures in making its determination, or make findings of fact that were clearly erroneous. *See Harris*, 989 F.3d at 911. Additionally, on appeal, Pete asserts new topics on which McKee would have testified that he failed to raise in the district court. Accordingly, we affirm as to this issue.

### III.  CONFRONTATION CLAUSE

We examine whether a statement is testimonial under the Confrontation Clause *de novo*. *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010). We will excuse a violation of the Confrontation Clause if the error is harmless beyond a reasonable doubt. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). Whether error is harmless depends upon numerous factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." *Id.* Further, "[t]o require a new trial . . . [a] significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the . . . statement had a substantial impact upon the verdict of the jury." *United States v. Ransfer*, 749 F.3d 914, 927 (11th Cir. 2014) (quotation marks omitted).

Even assuming without deciding that Pete's rights under the Confrontation Clause were violated when Pike testified on redirect

23-14112                Opinion of the Court                9

examination that an unidentified, independent toolmark examiner reached the same conclusion as he did, any potential error was harmless beyond a reasonable doubt, because the Government presented substantial evidence of Pete's guilt.  The Government's evidence included information extracted from Pete's cellphone that the phone was in the parking lot of the Coyote Sports Bar at the time of the shooting and then traveled west.  The phone also showed a google search for "Two Shot Outside of Pensacola Bar" around 5:30 p.m. on the day of the shooting and revealed that two articles on the Coyote Sports Bar shooting were viewed.  Pete was also found with the same type of gun and ammunition that was used in the shooting, and he met the general description provided by the victims.  There is not a significant possibility that Pike's statement confirming the peer-reviewer's findings at the end of his re-direct examination had a substantial impact on the guilty verdict, such that a new trial should be required.  *See Ransfer*, 749 F.3d at 927.  Notably, Pete does not challenge any other portion of Pike's testimony as violating the Confrontation Clause, and therefore, the jury properly heard Pike's finding, as an ATF examiner, that the gun found at Pete's arrest was the gun used to shoot the victims. Based on the overall strength of the prosecution's case, any potential Confrontation Clause violation was harmless beyond a reasonable doubt.

Accordingly, we affirm as to this issue.

**AFFIRMED.**